UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE LORRAINE GREEN,<br><br>Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>Respondent. | No. 1:18-cv-00775-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.      Introduction**

Plaintiff Christine Lorraine Green ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disabled widows' benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 13 and 15. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

## II. Procedural Background

On June 24, 2014, Plaintiff filed applications for disabled widows' benefits pursuant to Title II and supplemental security income pursuant to Title XVI alleging disability beginning March 1, 2014. AR 16. The Commissioner denied the application initially on December 22, 2014, and upon reconsideration on April 7, 2015. AR 16. On April 16, 2015, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 16.

Administrative Law Judge Ruxana Meyer presided over an administrative hearing held on January 11, 2017. AR 115-52. Plaintiff appeared and was represented by an attorney. AR 115. Impartial vocational expert Robin Shure (the "VE") also testified. AR 115.

On March 20, 2017, the ALJ denied Plaintiff's application. AR 16-27. The Appeals Council denied review on April 9, 2018. AR 1-3. On June 6, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony and Reports

Plaintiff (born February 28, 1963) lived with her 18-year-old daughter and their pets. AR 119. She completed a certified nursing assistant certificate but did not complete high school nor a GED. AR 122. She previously worked in convalescent homes and provided in-home care through an agency. AR 122-23.

Plaintiff had stopped driving because her vision problems impaired her driving and driving was hard on her vision. AR 121. She retained her driver's license, which had no restrictions, but drove only a few times a year for short distances. AR 121. Usually Plaintiff's daughter-in-law or daughter drove Plaintiff wherever she needed to go. AR 123. All of Plaintiff's five older children lived nearby and were available to help her as needed. AR 125. Plaintiff's 18-year-old daughter, her youngest child, attended high school online so that she could be home to assist Plaintiff. AR 124-25. Her "amazing daughter" cooked and managed all the housework and brought clean laundry to Plaintiff so that she could fold it. AR 135.

Plaintiff experienced anxiety, especially when other people were present. AR 126. She "fe[lt] comfortable and safe at home." AR 126. When she was working, Plaintiff chose to work

the night shift, which required less interpersonal contact. AR 126. She preferred to shop mid-morning when fewer customers were in the store. AR 126. Similarly, Plaintiff went to church on Friday nights and prayed while the church was open for confessions. AR 125.

Plaintiff's depression worsened after her husband's unexpected death in 2007 left her alone to raise their children. AR 137. Plaintiff took Zoloft and Xanax for depression and anxiety. AR 136. She spoke with nurse practitioner Judy Kelly monthly. AR 138. Medication was sufficient treatment "as long as [Plaintiff] stay[ed] home and [her] daughter t[ook] care of [her]." AR 138.

Plaintiff saw her doctor weekly to check her diabetes. AR 128. Her glucose monitor kept a record of her blood sugar for the doctor's review. AR 128. She did not need medication for diabetes but controlled her sugars with a vegetarian diet. AR 128.

Although nothing could be done to replace the vision Plaintiff lost in her left eye, Dr. Kaye checked her retinas every few months to ensure that she does not experience another retinal hemorrhage. AR 129. Plaintiff also regularly saw a specialist who monitored her failing kidneys. AR 130.

Plaintiff used a cane due to bilateral hip arthritis. AR 133. Injections of lidocaine and cortisone alleviated her hip and knee pain. AR 130, 132, 133. Regular medications included Tramadol, Norco and Ibuprofen[3] for inflammation and pain. AR 132. Plaintiff had recently fallen and injured her knee when her hip gave out. AR 130-31. Dr. Robel and his nurse practitioner, Ms. Ducet, recommended knee and hip surgery. AR 133-34. Plaintiff also treated her knee with ice and elevation. AR 140.

As a result of working as a nursing assistant, Plaintiff had shoulder pain that caused numbness in her hands. AR 134. Her doctors had not focused on treating her shoulder pain because their primary concern was Plaintiff's kidney failure. AR 134-35.

Plaintiff testified that before her recent fall, she could walk about a block before her hip and knee began to swell. AR 140. She could stand about ten minutes before needing to sit down,

---

[3] Although ibuprofen is most effective for inflammation and swelling, Plaintiff's doctors discourage its use since it is damaging to her kidneys. AR 139.

and sit about 20 minutes before she needed to change position. AR 141. She could not stand and walk for more than two hours in an eight-hour day. AR 141. She could lift a gallon of milk. AR 141. Plaintiff could see all right with her right eye if she wore her glasses, but her vision and anxiety disturbed her concentration. AR 142. She had good days and bad days. AR 142.

### B. Third-Party Report

Plaintiff's daughter-in-law Shelby Standridge reported that she spent much of her day assisting Plaintiff by driving Plaintiff and helping her with medical appointments. AR 341. Plaintiff's impairments limited her ability to drive, perform daily tasks such as house and yard work, and help with the grandchildren. AR 341. Ms. Standridge emphasized Plaintiff's anxiety, "She is constantly obsessing over OCD issues and her mind is always busy." AR 343. She added that Plaintiff was only comfortable with her family. AR 343. Plaintiff was frightened to be alone, had difficulty with change, tended to overreact, had panic attacks, could not sit still and was restless and emotional.

### C. Medical Records

Plaintiff received regular medical care from Family Health Services (FHS), a division of Madera Community Hospital (MCH). AR 33-114,[4] 401-40, 443-49, 469-76, 495-500, 507-08, 530-635. Although Plaintiff's records indicate that she had an assigned primary care physician, her regular appointments were handled by physician assistants or nurse practitioners. Lab analysis and x-rays and other imaging were conducted by MCH. AR 464-68. Plaintiff's diagnoses at FHS included diabetes mellitus, high blood pressure, hyperlipidemia, gastric reflux disorder (GERD), anxiety, eye pain and vision loss, degenerative arthritis of the knee, hip bursitis, right shoulder pain and various other joint pains. After developing chronic kidney disease in January 2015, Plaintiff also received specialized treatment from Sheikh Massoud, M.D., who diagnosed renal insufficiency. AR 49-97

X-rays of Plaintiff's right shoulder taken in June 2013 revealed minimal osteoarthritic changes at the superolateral humeral head and a mildly prominent acromioclavicular joint that

---

[4] These records were submitted to the Administrative Council following issuance of the hearing decision. Among other things, these record reflect treatment of back, wrist and leg pain that resulted from a motor vehicle accident on or about April 27, 2017.

4

was nonetheless within the normal range. AR 464. Ultrasound analysis of Plaintiff's kidneys in December 2014, revealed (1) mild right hydronephrosis and (2) bilateral echogenic kidneys consistent with long-standing renal disease. AR 501. In April 2016, x-rays revealed: (1) mild osteoarthritis of the left knee with mild loss of tibiofemoral joint space; (2) moderate osteoarthritis of the right knee with moderate loss of tibiofemoral joint space and prominent hypertrophic spurring at the joint margins; (3) a benign-appearing sclerotic bony medullary lesion in the distal right tibia; (4) mild bilateral hip osteoarthritis with mild loss of joint space and hypertrophic spurring at the joint margins; and, (5) chronic degenerative changes of the lower lumbar spine. AR 643-45. Magnetic resonance imaging of Plaintiff's right hip in October 2016 detected mild acetabular degenerative joint disease consistent with Plaintiff's age. AR 638.

Madera Community Hospital provided emergency services to Plaintiff. AR 452-68. On March 25, 2014, the MCH emergency department first treated Plaintiff for pain and impaired vision of her left eye. AR 461-63. Medical personnel suspected glaucoma or retinal displacement and directed Plaintiff to consult an optometrist or ophthalmologist the following morning. AR 462-63. Plaintiff returned to the emergency department on April 1, 2014, complaining of left eye pain and pressure, and a severe headache that could not be relieved with ibuprofen. AR 452-59. Personnel prescribed Percocet and again directed Plaintiff to consult an eye specialist.

Ophthalmologists Aryan Pazirandah, O.D., and David B. Kaye, M.D., of Natural Vision provided eye care. AR 512-29. In October 2014, Dr. Kaye diagnosed central serous chorioretinopathy of the left eye.[5] AR 528. In August 2015, Dr. Kaye diagnosed wet macular degeneration of the left eye and cystoid macular edema. AR 528-29. Plaintiff's vision was 20/40, right eye, and 20/400, left eye. AR 528. In October 2015, Dr. Kaye observed a subconjunctival hemorrhage. AR 525-27. In March 2016, Dr. Kaye diagnosed a branch retinal vein occlusion in Plaintiff's left eye. AR 521-24. In May 2016, Dr. Pazirandah observed retinal scarring and noted Plaintiff's blurred vision suggested glaucoma. AR 517-20. In September

---

[5] "Central serous chorioretinopathy, commonly referred to as CSC, is a condition in which fluid accumulates under the retina, causing a serous (fluid-filled) detachment and vision loss." www.asrs.org/patients/retinal-diseases/21/central-serous-retinopathy (accessed July 3, 2019).

2016, Dr. Pazirandah noted that the glaucoma symptoms were unchanged by treatment. AR 512-16.

X-rays of Plaintiff's lumbar spine at the Chowchilla Wellness Center in January 2017 revealed: (1) advanced multilevel degenerative discopathy and spondyloarthropathy which was particularly severe at L5-S1; and, (2) minimal anterolisthesis of L4 over L5. AR 665.

**IV.     Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.     The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

6

> An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

### VI. Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2014. AR 19. Her severe impairments included arthritis of the right knee, chronic kidney disease, degenerative joint disease of the shoulders, and macular degeneration in the left eye. AR 19. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526, 416.920(d), 416.925 and 416.926). AR 20.

The ALJ concluded that Plaintiff had the residual functional capacity to perform a range of light work. AR 21. Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently, and sit, stand and walk six to eight hours in an eight-hour workday. AR 1424.

///

Plaintiff could frequently reach overhead and occasionally balance, kneel, crouch and crawl. AR 21. Plaintiff was able to read ordinary newspaper or book print frequently. AR 21.

Plaintiff was not able to perform any past relevant work, however jobs that Plaintiff can perform existed in significant numbers in the national economy. AR 25. Accordingly, the ALJ found that Plaintiff was not disabled from March 1, 2014, through March 20, 2017 (the date of the hearing decision). AR 26.

## VII. The ALJ's Evaluation of Medical Evidence

Plaintiff contends that that the ALJ failed to consider fully the various medical opinions, particularly those rendered by Ms. Maldonado and Ms. Kelley. The Commissioner disagrees, contending that in determining Plaintiff's residual functional capacity the ALJ properly relied on the record as a whole.

### A. Medical Opinions[6]

#### 1. Agency Physicians

On initial review of Plaintiff's physical impairments (completed in December 2014), L. Bobba, M.D., diagnosed diabetes complicated by retinopathy and a history of chronic kidney disease. AR 161. Dr. Bobba relied on the consultative examiner's opinion that Plaintiff had good range of motion and full strength in her shoulders and recommended a consultative examination concerning Plaintiff's vision impairment. AR 161. Following receipt of the consulting ophthalmologist's opinion, Dr. Bobba opined that Plaintiff's vision impairment (20/400 in left eye) was not a severe impairment since vision in her right eye was correctable to 20/30. AR 161. The agency determined that Plaintiff was able to lift and carry 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk six hours in an eight-hour work day. AR 164. Plaintiff could frequently balance, stoop, kneel, crawl and climb ramps, stairs, ladders, ropes and scaffolds. AR 164-65. She had unlimited ability to handle, finger and feel, but limited ability to reach overhead to the right and left. AR 165. Plaintiff had no visual, communicative or environmental limitations. AR 165.

---

[6] Because Plaintiff does not challenge the ALJ's determination that her depression and anxiety were not severe impairments, the Court does not examine medical opinions addressing Plaintiff's alleged mental health impairments.

8

On reconsideration, agency physician Joan L. Bradus, M.D., summarized:

> [Claimant] has diabetes mellitus with end organ damage of renal insufficiency with creatinine 1.4 but no related [symptoms]. [She] also has shoulder impingement bilaterally, mild obesity, blind left eye, mild foot pain. [She is] still limited to light work, no 12 mos. of greater limitations since AOD.

AR 196.

Dr. Bradus agreed with Dr. Bobba's determination of Plaintiff's residual functional capacity. AR 198-200.

### 2.  **Internal Medicine Consultative Opinion**

Internist Rustom Damania, M.D., conducted a consultative examination of Plaintiff on October 31, 2014. AR 482-87. Dr. Damania observed that Plaintiff's range of motion was generally within normal limits except for a reduced range of motion in her shoulders. AR 485. Plaintiff had full strength, good muscle tone and intact sensory function. AR 486. Dr. Damania diagnosed diabetes mellitus, diabetic retinopathy of the left eye, likely diabetic nephropathy, hypertension, and likely bursitis of the shoulders. AR 486.

Dr. Damania opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and sit, stand and walk six hours in an eight-hour work day. AR 486. She could not lift anything above shoulder level but had no other manipulative limitations. AR 486. Plaintiff did not require an assistive device for ambulation. AR 486. Plaintiff had significant visual impairment of the left eye. AR 486.

### 3.  **Ophthalmological Consultative Opinion**

Ophthalmologist Gary C. Graham, M.D., examined Plaintiff on December 8, 2014. AR 489-91. Plaintiff's vision was best corrected to 20/30 in the right eye and 20/400 in the left eye. AR 489. Plaintiff had no foveal reflex in either eye, and no peripheral vision field in her left eye. AR 489. However, Dr. Graham did not observe the usual evidence of laser photocoagulation

///

normally seen following treatment of diabetic neuropathy. AR 489. He opined that Plaintiff had myopia in both eyes and possible maculopathy of her left eye. AR 489.

### 4. <u>**Physical Medical Source Statement--Maldonado**</u>

On March 18, 2016, Nicole Maldonado, PA-C, completed a questionnaire form on which she reported Plaintiff's diagnoses as chronic kidney disease (stage three), chronic right shoulder pain and chronic right knee pain. AR 503-06. Ms. Maldonado opined that Plaintiff could occasionally lift ten pounds, frequently lift five pounds and occasionally carry five pounds. AR 503-04. Plaintiff could sit about six hours in an eight-hour workday, and stand and walk about four hours in an eight-hour workday. AR 504. Plaintiff could walk one city block or more without requiring rest or experiencing severe pain, but could not walk that distance on rough or uneven ground. AR 504. Plaintiff had no balance problems while walking but could not climb stairs without using the handrail. AR 504. She had difficulty stooping, crouching and bending. AR 504. Plaintiff would likely need to take unscheduled breaks for ten minutes at a time in an eight-hour workday. AR 504-05. With prolonged sitting, Plaintiff should elevate her legs about 25 per cent of the time. AR 505. Plaintiff had significant manipulative limitations of her right hand and fingers and could reach overhead 25 percent of the workday on the right and 75 percent on the left. AR 505. She should not climb stairs, ladders, scaffold, ropes or ramps. AR 505.

Depression and anxiety contributed to Plaintiff's symptoms and functional limitations. AR 505. Pain and stress would occasionally interfere with attention and concentration needed to perform simple work tasks. AR 505. Plaintiff would be off task about 20 per cent of the workday, work less than a full day at least three days monthly and would likely miss four days of work monthly. AR 506. She would likely be about 60 percent as efficient at the job as an average worker. AR 506.

///

### 5. <u>Physical Medical Source Statement--Kelley</u>

On a questionnaire form dated December 12, 2016, Judy Kelley, FNP, reported Plaintiff's diagnoses as chronic kidney disease (stage three), arthritis right knee, left hip bursitis, and chronic right shoulder pain. AR 659-62. Ms. Kelley's statement is substantially the same as the statement previously prepared by Ms. Maldonado except for her assessment of Plaintiff's residual functional capacity. Ms. Kelley opined that Plaintiff could occasionally lift five to ten pounds and frequently lift less than five pounds and could rarely carry five to ten pounds and occasionally carry less than five pounds. AR 659-60. Plaintiff's fatigue and left eye blindness further limited her ability to perform work. AR 661-62.

### B. <u>The ALJ's Analysis</u>

In evaluating Plaintiff's residual functional capacity at step four, the ALJ declined to credit Dr. Damania's opinion to the extent that it relied on Plaintiff's subjective limitations, particularly the limitations on postural and overhead reaching. AR 23. The ALJ considered the opinions of the agency physicians, Drs. Bobba and Bradus, but favored Dr. Bradus' opinion since it was rendered after the agency had secured evidence not available to Dr. Bobba. AR 23. After examining the record as a whole, the ALJ found that the residual functional capacity to which both agency physicians opined appropriately accommodated Plaintiff's pain and decreased mobility. AR 23.

The ALJ gave no weight to the checklist opinions of Ms. Maldonado and Ms. Kelley, which appeared to be documents prepared to accommodate Plaintiff's desire for disability benefits. AR 23. In particular, the ALJ criticized both documents for providing conclusory functional limitations without any meaningful explanation for the conclusions. AR 24. Similarly, the ALJ found the Ms. Maldonado's provision of a cane to be used "as needed" did not establish

///

that an assistive device was necessary in the absence of any documentation describing how and when it was intended to be used. AR 24.

### C. **Applicable Law**

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### D. **ALJ's Evaluation of Kelley and Maldonado Opinions**

Plaintiff contends that the ALJ erred in failing to give greater consideration to Kelley's and Maldonado's opinions, arguing that the ALJ should have recognized that their special knowledge of Plaintiff's impairments enabled them to provide insight into the severity of each impairment and its effect on Plaintiff's ability to function. Doc 13 at 13-14. The Commissioner and the Court do not agree.

Nurse practitioners and physician assistants are not evaluated as if they were physicians. Neither is considered an acceptable medical source under 20 C.F.R. § 416.913.[7] Instead, they are considered to be other sources whose opinions are not entitled to special weight. 20 C.F.R. § 416.913(d)(1) (listing medical sources that are considered other sources, including nurse practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists). An ALJ may reject the opinions of other sources by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Factors used to evaluate other sources' opinions include: (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3) supportability of opinion; (4) consistency with the record; (5) specialization; and, (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 416.927 (c) and (f)(1).

Plaintiff's actual argument is not that the ALJ failed to consider Kelley's and Maldonado's opinions, but is rather that the ALJ failed to accept their opinions and instead concluded that Plaintiff retained greater residual functional capacity than Ms. Kelley and Ms. Maldonado did. Contrary to Plaintiff's allegations, the ALJ carefully considered Ms. Kelley's and Ms. Maldonado's opinions before rejecting them as conclusory and unsupported, overly accommodating to Plaintiff's desire for disability benefits, excessively reliant on Plaintiff's subjective complaints and inconsistent with the record. AR 23-24. The ALJ's analysis was legally sufficient and based on evidence included in the record as a whole.

An ALJ appropriately disregards a medical report if it does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *Morgan*, 169 F.3d at 601. Similarly, the ALJ may properly reject an opinion that is conclusory and unsubstantiated by relevant medical documentation. *Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995.) The record must include objective evidence to support the medical opinion of the claimant's residual functional capacity. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

---

[7] The Social Security Administration has adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The revisions do not apply to Plaintiff's claim, which was filed June 24, 2014.

Inconsistencies with the overall record or with a physician's own notes are a valid basis to reject a medical opinion. *Molina*, 674 F.3d at 1111-1112 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician opinion where physician's "other recorded observations and opinions" contradicted his ultimate conclusions); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting treating physician's opinion when treatment notes provide no basis for the opined functional restrictions); *Tommasetti*, 533 F.3d at 1041 (incongruity between questionnaire responses and the Plaintiff's medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion). In short, nothing required the ALJ to accept the opinions of Ms. Kelley and Ms. Maldonado, and the ALJ fully supported her rejection of those opinions with other evidence of record.

### E. Changes in Plaintiff's Symptoms and Diagnoses

In a separate issue, Plaintiff emphasizes that just as the ALJ preferred Dr. Bradus's medical opinion since it was based on additional evidence not available to Dr. Bobba, the ALJ should have preferred the opinions of Ms. Kelley and Ms. Maldonado since these opinions considered Plaintiff's later development of right knee pain and swelling in March to April 2015, and hip pain in March 2016. Plaintiff reasons that Dr. Bradus's opinion cannot be substantial evidence since it did not consider Plaintiff's later medical developments and that the ALJ erred in failing to give greater weight to Ms. Kelley's and Ms. Maldonado's more recent opinions. Defendant counters that Plaintiff neither provides a legal basis for her argument, nor establishes that the additional impairments imposed greater functional limitations than those identified before their onset. Particularly because Kelley's and Maldonado's opinions were conclusory and unsupported by objective medical evidence, the Court agrees with Defendant that the ALJ was not required to adopt those opinions simply because they were the most recent.

The Court's "sole inquiry is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the [administrative] law judge." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Richardson*, 402 U.S. at

401). Notwithstanding the ALJ's determination to focus on Dr. Bradus's more recent opinion, Plaintiff provides no legal authority for the proposition that a medical opinion ceases to be substantial evidence with the passage of time and the evolution of the claimant's condition. In fact, despite Dr. Bradus's access to additional medical evidence, Dr. Bradus agreed with Dr. Bobba's assessment of Plaintiff's residual functional capacity.

The administrative law judge "is entitled to draw inferences logically flowing from the evidence." *Sample*, 694 F.2d at 642. Although the ALJ must consider the opinions from medical sources concerning a claimant's impairments or residual functional capacity, the ALJ has the final responsibility for deciding these issues. 20 C.F.R. § 404.1527.

### F. Conclusion

A district court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews*, 53 F.3d at 1039; *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of her treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066. The ALJ did not err in failing to accept the opinions of Ms. Maldonado and Ms. Kelley.

### VIII. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of

///

the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Christine Lorraine Green.

IT IS SO ORDERED.

    Dated:   **July 18, 2019**                  **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE